IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

RALPH H. JURJENS, III,

                      Plaintiff,

   v.

JASON H. CHATMAN, SHAYNE S. LLOYD,
BRIAN L. REYNOLDS, CHONG XIONG,
MARTHA J. MASCIOPINTO, and
JUSTIN S. RIBAULT,

                      Defendants.

OPINION and ORDER

23-cv-88-jdp

---

Plaintiff Ralph H. Jurjens, III, proceeding without counsel, is currently incarcerated at New Lisbon Correctional Institution. Jurjens alleges that when he was at Columbia Correctional Institution, staff failed to adequately treat his seizure disorder and responded to one of his seizures by using unnecessary force against him. Dkt. 8. I allowed Jurjens to proceed on Eighth Amendment excessive force claims against defendants Jason Chatman, Shayne Lloyd, Brian Reynolds, and Chong Xiong. *Id.* Jurjens also proceeds on Eighth Amendment and Wisconsin-law medical malpractice claims against defendants Dr. Justin Ribault and Dr. Martha Masciopinto, who is not represented by the state. *Id.*

The state defendants move for partial summary judgment, contending that Jurjens failed to exhaust his administrative remedies on his excessive force claims against defendants Chatman, Lloyd, Reynolds, and Xiong. Dkt. 30.[1] I will grant the state defendants' motion and

---

[1] Jurjens filed two motions for an extension of time to file his summary judgment response, Dkt. 33 and Dkt. 34, and followed with his response, Dkt. 35. I will grant his motions for extension of time and I will consider his opposition materials.

dismiss Jurjens's excessive force claims. The lawsuit will continue with only his medical care claims.

## BACKGROUND

On December 22, 2019, Jurjens had a seizure in his cell. Jurjens alleges that defendant officers Chatman, Lloyd, Reynolds, and Xiong attempted to apply restraints, used a restraint chair and a spit mask, and tased Jurjens twice before taking him to receive medical attention in the health services unit. This was Jurjens's third seizure during his incarceration at Columbia Correctional Institution. The prior two instances, officers took Jurjens to the hospital for treatment instead of restraining and tasing him. Dk. 1, at 4–6.

Three inmate complaints are at issue. Five days after the incident, Jurjens filed an inmate complaint, alleging that defendant officers disregarded his health and safety by tasing him twice during his seizure. Dkt. 35-3, at 1. The complaint examiner returned the complaint for two reasons: (1) Jurjens's failure to attempt informal resolution before filing a formal complaint; and (2) violation of the regulation generally limiting inmates to one complaint a week (this was this third of the week). Dkt. 35-2. The return letter directed Jurjens to contact the security director to attempt informal resolution and allow 10 days for a response. *Id.* The return letter gave Jurjens the opportunity to correct these issues and resubmit the returned complaint under Wisconsin Administrative Code DOC § 310.10(5), which gives an inmate 10 days to refile a complaint after correcting its deficiencies. *Id.*

After completing informal resolution, Jurjens refiled his complaint. Dkt. 35-1. On January 15, 2020, the complaint examiner returned the second complaint for violating the one-complaint-per-week limitation (he had also filed a complaint about lack of medical treatment

for his seizure disorder). Dkt. 31-5, at 1. Again, the complaint examiner directed Jurjens resubmit the complaint within 10 days under DOC § 310.10(5).

Jurjens again refiled his complaint on January 31, 2020, 16 days after his second complaint was returned. Dkt. 31-3, at 8. The complaint examiner rejected the third complaint as untimely. *Id.*, at 2. Jurjens appealed the rejection, and the reviewing authority affirmed the decision. *Id.*, at 6.

## PLRA EXHAUSTION STANDARD

Under the Prison Litigation Reform Act (PLRA), "[a]n inmate complaining about prison conditions must exhaust administrative remedies before filing suit." *Conyers v. Abitz*, 416 F.3d 580, 584 (7th Cir. 2005). "The exhaustion requirement's primary purpose is to alert the state to the problem and invite corrective action." *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013) (alteration adopted). Because exhaustion is an affirmative defense, the burden of proof is on defendants. *Id.* at 650.

"To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002); *see also Lanaghan v. Koch*, 902 F.3d 683, 687 (7th Cir. 2018). The PLRA's exhaustion requirement is mandatory. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006); *see also Lockett v. Bonson*, 937 F.3d 1016, 1025 (7th Cir. 2019) ("We take a strict compliance approach to exhaustion." (alteration adopted)). Failure to exhaust requires dismissal of a prisoner's case without prejudice. *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004).

The Wisconsin Department of Corrections maintains a complaint process in all state adult prisons. *See* Wis. Admin. Code DOC § 310.01. As relevant here, the inmate must first

attempt to resolve the issue with an appropriate member of the prison staff before filing a formal complaint. *See* § 310.07(1). Ordinarily, inmates must file a complaint "within 14 days after the occurrence giving rise to the complaint." Section 310.07(2). And inmates may only submit one complaint per week, § 310.07(7), although complaints "regarding the inmate's health and personal safety" are exempt from the one-complaint-per-week limitation. § 310.07(7)(a).

Once the DOC receives the complaint, the complaint examiner may accept, reject, or return the complaint. *See* § 310.10. Under DOC § 310.10(5), the complaint examiner may return a complaint for various errors, including an inmate's failure to attempt informal resolution or for violation of the one-complaint-per-week limitation. The inmate may correct and refile a returned complaint, and the examiner "shall grant 10 days for receipt of the corrected complaint." *Id.*

The complaint examiner may reject a complaint for several reasons, including the failure to follow DOC procedures. § 310.10(6). A rejected complaint, as opposed to a returned complaint, may be appealed to the appropriate reviewing authority. § 310.10(10). However, when a complaint is rejected because it was procedurally flawed, it "cannot satisfy the exhaustion requirement even if appealed." *See, e.g.*, *Parker v. Almonte-Castro*, No. 21-cv-509-bbc, 2022 WL 2274875, at *4.

ANALYSIS

The state defendants move for partial summary judgment on Jurjens's Eighth Amendment excessive force claims against defendants Chatman, Lloyd, Reynolds, and Xiong. They contend that none of Jurjens's three complaints properly exhausted his administrative

4

remedies, stating that his first two complaints were returned for violating DOC regulations and that the third was rejected as untimely.

## A. First complaint

Jurjens's first complaint was returned for two reasons: (1) his failure to complete informal resolution first; and (2) violation of the one-complaint-per-week limitation. Defendants contend that the complaint examiner properly rejected the first complaint under DOC § 310.07(1) for failing to complete informal resolution. Jurjens does not dispute that he filed the first complaint without attempting informal resolution. Dkt. 35, at 4. I conclude that Jurjens's first complaint did not properly exhaust his administrative remedies.

## B. Second complaint

Jurjens filed his second complaint after he attempted informal resolution. That calendar week, Jurjens filed three complaints. Dkt. 35-2. The complaint examiner returned what I've been referring to as the second complaint for violation of the one-complaint-per-week limitation. *Id.* Because this complaint was returned, it did not exhaust Jurjens's administrative remedies.

Jurjens argues that the examiner incorrectly returned this complaint under the one-complaint-per-week limitation because there is an exception for complaints "regarding the inmate's health and personal safety." Wis. Admin. Code. DOC § 310.07(7)(a). Jurjens contends that the examiner should have accepted the second complaint and that the examiner's interpretation of the exception confused him and created a game of "gotcha" intended to prevent him from filing a timely complaint. Dkt. 35, at 6–7. "Prison officials may not take unfair advantage of the exhaustion requirement . . . and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative

5

misconduct to prevent a prisoner from exhausting." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006); *see also Ross v. Blake*, 578 U.S. 632, 644 (2016) ("When rules are so confusing that . . . no reasonable prisoner can use them, then they're no longer available." (internal quotation omitted)). Prison officials didn't take unfair advantage of the exhaustion rules here.

Defendants assert that the health and personal safety exception was inapplicable because Jurjens's complaint concerned a *past* issue of health and personal safety, not a current issue. Dkt. 30, at 10. Section 310.07(7) doesn't explicitly state that the health or personal safety issue must be current.

In support of their interpretation, defendants cite an Eastern District of Wisconsin case, stating in their brief:

> Insofar as Jurjens argues that his complaint should never have been returned the second time because his complaint triggered the health and personal safety exception to the one-complaint-per-week rule under Wis. Admin Code DOC 310.07(7)(a), he is wrong because his complaint was "based on a *past* event, not *current* threat to health or safety."

Dkt. 30, at 10 (purporting to quote *Morris v. Peters*, No. 19-cv-1864, 2021 WL 718236, at *3 (E.D. Wis. Feb. 24, 2021) (emphasis added in defendants' brief)). But the *Morris* decision didn't fairly address the DOC's interpretation of § 310.07(7)(a): the quoted passage comes from the court's summary of the underlying facts of the plaintiff's exhaustion attempts and examiner responses, not the court's analysis of the exhaustion issue. I note further that the purported quotation here is more of a paraphrase: the actual passage states "this second complaint did not meet the § DOC 310.07(7) health and personal safety exception because it was a past event—not a current threat to his health or safety."). 2021 WL 718236, at *3. Counsel's sloppy treatment of *Morris* does not support defendants' argument.

6

Nonetheless, this court has long held that it must defer to prison officials "regarding interpretation and application of their own grievance procedures so long as the procedures provide inmates with a meaningful opportunity to present grievances." *Jones v. Frank*, No. 07-cv-141-bbc, 2008 WL 4190322, at *3 (W.D. Wis. Apr. 14, 2008) (quoting *Strong v. David*, 297 F.3d 646, 649 (7th Cir. 2002) ("It is up to the administrators to determine what is necessary to handle grievances effectively.")); *see also Naseer v. Belz*, No. 13-cv-821-jdp, 2014 WL 5494440, at *4 (W.D. Wis. Oct. 30, 2014) (noting "the deference this court has applied to DOC staff interpreting grievance rules in the past"); *Ajala v. Tom*, No. 13-cv-102–bbc, 2014 WL 905467, *4 (W.D. Wis. Mar. 7, 2014) ("It is enough to say that the examiner's interpretation is one reasonable view."), *vacated on other grounds*, 592 F. App'x 526 (7th Cir. 2015). But "courts need not defer to interpretations that are clearly erroneous or inconsistent with the language of the regulation." *Simpson v. Greenwood*, No. 06-cv-612-bbc, 2007 WL 5445538, at *4 (W.D. Wis. Apr. 6, 2007).

This court has previously addressed the DOC's interpretation of the health and personal safety exception and approved it. *Ajala*, No. 13-cv-102–bbc, 2014 WL 905467, at *4–5. In that case, the complaint examiner did not accept a complaint under the health and personal safety exception because it concerned a past threat, not a current threat. This court deferred to the DOC's interpretation and held that this interpretation of the rule was reasonable. *Id*. This court reasoned that limiting the health and personal safety exception to current threats "makes the most sense in the context of the rule" because it "permits prison officials to further the purpose of the rule while providing a safety hatch when it is necessary to prevent imminent harm to the prisoner." *Id.* at *5. I agree with the reasoning in *Ajala* regarding the interpretation of the health and personal safety exception: it makes sense that the DOC would allow a prisoner

7

to immediately file a complaint about a current threat of harm even if that complaint exceeded the ordinary weekly limit.

The next issue is whether the complaint examiner reasonably applied that interpretation to the facts of Jurjens's complaint. In Jurjens's complaint, he stated that three weeks prior, officers tased him during a seizure, which could have "stopped [his] heart and filled [him]." Dkt. 31-5, at 2. The complaint examiner didn't accept the complaint under the health and personal safety exception. Instead, the examiner told him to refile the complaint within 10 days, presumably when that complaint would be his only complaint of the week. Given that Jurjens's complaint explicitly discussed an incident of past harm, the examiner's decision to return the complaint instead of allowing it under the health and personal safety exception was reasonable. The 10-day extension gave Jurjens another chance to timely file his complaint; the examiner's application of DOC rules didn't render administrative remedies unavailable to Jurjens.

**C.  Third complaint**

Jurjens's second complaint was returned on January 15, 2020. Jurjens submitted his third complaint on January 31, 2020, 16 days after the return letter and past the 10-day deadline that the examiner gave him under DOC § 310.10(5). Jurjens no longer had the problem of filing multiple complaints in one week. But this time the complaint examiner rejected the third complaint as untimely, stating that Jurjens filed the complaint more than 14 days after the day of the incident, citing DOC § 310.10(6)(e). Dkt. 31-3, at 2.

It was unreasonable for the examiner to invoke the 14-day deadline from the date of the underlying incident: the examiner had already explicitly granted Jurjens extensions of time to refile his complaint within 10 days under DOC § 310.10(5). If this error were material, I

8

would deny defendants' motion for summary judgment for the examiner's failure to provide Jurjens with a meaningful opportunity to present his complaint.

But the error is immaterial. Jurjens's third complaint was late even under the 10-day deadline that the examiner had given him to refile his returned second complaint under DOC § 310.10(5). The complaint examiner may accept a late complaint for good cause if the inmate requests to file a late complaint and states the reason for doing so. DOC § 310.07(2). But Jurjens did not do so here. So Jurjens's third complaint was untimely under DOC regulations.

None of Jurjens's three complaints exhausted his administrative remedies. I will grant the state defendants' partial motion for summary judgment and dismiss his Eighth Amendment excessive force claims against Chatman, Lloyd, Reynolds, and Xiong. This case will proceed only on his Eighth Amendment and Wisconsin-law medical malpractice claims against defendants Ribault and Masciopinto.

**D. Additional issues**

Jurjens moves to extend his deadline to submit expert disclosures, stating that he has been busy litigating a postconviction motion in a state-court criminal case. Dkt. 36. I will grant that motion and set a new deadline for his expert disclosures in the order below.

The state defendants move for leave to file an amended answer including a statute of limitations defense that they became aware of only after receiving authorization to review Jurjens's full medical file. Dkt. 38. I will grant that motion and accept defendants' proposed amended answer, Dkt. 39.

Defendant Masciopinto moves for summary judgment. Dkt. 43. Jurjens moves for an extension of time to file his response to that motion. Dkt. 49. He also moves for the court's assistance in recruiting him counsel, stating that his ability to litigate the lawsuit is hampered

by his imprisonment, that he has little legal experience, and that it is difficult to obtain expert testimony. Dkt. 50.

I will grant Jurjens's motion for extension of time to brief the summary judgment motion but I will deny his motion for counsel. He has shown that he cannot afford counsel and that he has contacted three lawyers who have turned him down. But he does not show that the case is too complex for him to handle. His handicaps are common among prisoners who litigate in this court. Nothing in his filings so far suggests that he needs help to respond to Masciopinto's summary judgment motion. If the parties' summary judgment materials make clear that Jurjens's case boils down to a lack of expert testimony, then I will consider recruiting counsel to procedure that testimony. But for now Jurjens's task is to respond to Masciopinto's summary judgment motion.

ORDER

IT IS ORDERED that:

1. Plaintiff's motions for extension of time to file his summary judgment response, Dkt. 33 and Dkt. 34, are GRANTED.

2. The state defendants' motion for partial summary judgment on exhaustion grounds, Dkt. 29, is GRANTED.

3. The Eighth Amendment excessive force claims against defendants Jason Chatman, Shayne Lloyd, Brian Reynolds, and Chong Xiong are DISMISSED without prejudice. Chatman, Lloyd, Reynolds, and Xiong are DISMISSED from the case.

4. Plaintiff's motion for extension of his expert-disclosure deadline, Dkt. 36, is GRANTED. Plaintiff's new deadline is September 3, 2024.

5. The state defendants' motion for leave to file an amended answer, Dkt. 38, is GRANTED.

6. Plaintiff's motion for extension of time to respond to defendant Masciopinto's motion for summary judgment, Dkt. 49, is GRANTED. Plaintiff's new response deadline is September 5, 2024. Masciopinto's reply deadline is September 16, 2024.

7. Plaintiff's motion for the court's assistance in recruiting him counsel, Dkt. 50, is DENIED without prejudice.

Entered August 14, 2024.

                              BY THE COURT:

                              /s/

                              _____
                              JAMES D. PETERSON
                              District Judge