IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

RALPH H. JURJENS, III,

                Plaintiff,

v.

JUSTIN S. RIBAULT,

                Defendant.

OPINION and ORDER

23-cv-88-jdp

---

      Plaintiff Ralph H. Jurjens, III, proceeding without counsel, is currently incarcerated at New Lisbon Correctional Institution. Jurjens alleges that when he was at Columbia Correctional Institution, staff failed to adequately treat his seizure disorder and responded to one of his seizures by using unnecessary force against him. Dkt. 8. I have already dismissed most of Jurjens's claims. *See* Dkt. 52 and Dkt. 74. The only remaining claims are his Eighth Amendment and Wisconsin-law medical malpractice claims against defendant Dr. Justin Ribault.

      Ribault moves for summary judgment on those claims. Dkt. 59. Jurjens has not responded to that motion, even after he was granted multiple extensions of time to do so. *See* Dkt. 74 and Dkt. 77. Under this court's summary judgment procedures, that means that I will consider Ribault's proposed findings to be undisputed. *See* attachments to preliminary pretrial conference order, Dkt. 26, at 8 ("If a party fails to respond to a fact proposed by the opposing party, the court will accept the opposing party's proposed fact as undisputed."). Based on the undisputed facts, I will grant summary judgment to Ribault concerning Jurjens's Eighth Amendment claims. I will relinquish jurisdiction over Jurjens's state-law claims.

UNDISPUTED FACTS

Plaintiff Ralph H. Jurjens, III, is currently incarcerated at New Lisbon Correctional Institution. At the times relevant to the active claims in this case, he was incarcerated at Columbia Correctional Institution (CCI). Defendant Justin Ribault was a physician at CCI from July 2019 to July 2021.

Prior to November 28, 2018, Jurjens did not have a history of seizures that was documented in his medical record. On November 28, 2018, Jurjens was sent to Divine Savior Hospital for evaluation of a convulsive episode. When Jurjens returned to CCI, he reported to a nurse that he had taken six gabapentin tablets "to get high." Dkt. 62-1, at 73.

On June 28, 2019, a nurse saw Jurjens for a possible seizure or overdose. She found that Jurjens did not have a history of unprovoked seizures, but did have a history of overdose, one of which resulted in the November 2018 episode. Jurjens was sent to the Divine Savior Hospital. Staff there contacted the UW Health neurology department, who recommended that Jurjens be placed on Keppra (levetiracetam), an antiepileptic prescription medication used to treat certain types of seizures. A doctor at CCI prescribed a ten-day order of this medication for Jurjens.

After that order ended in mid-July 2019, a nurse wrote to the CCI doctor noting that Jurjens had no history of seizures but did have a history of overdose, and asking if the Keppra prescription "is something that we were doing short term because of a possible overdose, or if it is a long terms medication that we would want to renew for him?" *Id.* at 15. The doctor stated that she would look into the prescription recommendation and whether Jurjens's seizure was caused by an overdose. Later that month, a nurse practitioner saw Jurjens, stated that he

2

would be evaluated by neurology, and noted that seizures can occur when taking bupropion, an anti-depressant that Jurjens was also taking.

On August 7, 2019, Jurjens was seen by the UW Health neurology department. A nurse practitioner there recommended that Jurjens be prescribed Keppra, have an MRI; have an epilepsy monitoring unit video electroencephalogram, and return to the clinic via telemedicine in three months.

The CCI nurse's note about continuing Keppra was forwarded to defendant Dr. Ribault, who reviewed Jurjens's medical records. Ribault noted that Jurjens had refused to take his Keppra seven of the ten days that it had initially been prescribed. The notes from the UW Health visit indicated that Jurjens reported that his seizures were unprovoked, which Ribault believed was incorrect, because his prison medical records showed a history of overdose. Ribault believed that imaging had little use for a patient with seizure episodes caused by overdose. Ribault entered a progress note stating that a further seizure workup was unnecessary but that Jurjens could follow up with medical staff with any concerns. I infer that Ribault's note caused medical staff not to prescribe Jurjens additional Keppra or schedule other imaging recommended by UW Health.

Jurjens was seen by defendant Ribault on August 26, 2019. In his progress note, Ribault stated that Jurjens reported not taking any seizure specific prescription medication at the time, denied any recent seizure events, and stated that he was not interested in anti-seizure medication because of the potential side effects.

Jurjens had another seizure in December 2019 and was re-prescribed Keppra.

ANALYSIS

A. **Motion for summary judgment**

I granted Jurjens leave to proceed on two sets of Eighth Amendment and Wisconsin-law medical malpractice claims against defendant Ribault:

- Ribault failed to reorder anti-seizure medication prescribed to him by hospital staff after his June 2019 seizure.
- Ribault later told Jurjens that he wouldn't follow through with an outside neurologist's recommendations for medication, imaging tests, and a follow-up appointment.

1. **Eighth Amendment**

I will begin with Jurjens's Eighth Amendment claims. Ribault contends that he is entitled to summary judgment on Jurjens's Eighth Amendment claims for two reasons: (1) the statute of limitations had run on this claim; and (2) he did not consciously disregard Jurjens's condition.

There is a three-year statute of limitations for Eighth Amendment claims like Jurjens's. *See, e.g.*, *Turner v. Bonfiglio*, No. 23-cv-275-jdp, 2024 WL 3756399, at *1 (W.D. Wis. Aug. 12, 2024). That period is tolled by an inmate's efforts at exhausting administrative remedies. *See Johnson v. Rivera*, 272 F.3d 519, 522 (7th Cir. 2001). Ribault concedes that exhaustion was completed in March 2020, within three years of Jurjens filing his complaint. Nonetheless, Ribault argues that tolling should apply only from the time that Jurjens first filed his inmate grievance (February 2020), that the time between the accrual of the claim and Jurjens's initial grievance should also count towards the statute of limitations, and that application of this additional time would push Jurjens over the three-year limitations period. But the court of appeals has explicitly noted that it has not consistently resolved whether time before a grievance was filed should be tolled. *See Schlemm v. Pizzala*, 94 F.4th 688, 690–95 (7th Cir.

4

2024) (Hamilton, J., concurring). And the explicit language of the Wisconsin statue governing tolling states that an action is tolled until a statutory prohibition on filing is removed. *Id.* at 691 (Hamilton, J., concurring (quoting Wis. Stat. § 893.23, which states, "When the commencement of an action is stayed by injunction or statutory prohibition the time of the continuance of the injunction or prohibition is not part of the time limited for the commencement of the action.")). If confronted with the question again, the court of appeals would likely conclude that a prisoner's statute of limitations doesn't start running until exhaustion is completed. So I won't dismiss Jurjens's claims on statute-of limitations grounds.

The Eighth Amendment prohibits prison officials from acting with conscious disregard toward prisoners' serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). A "serious medical need" is a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment would be obvious to a lay person. *Johnson v. Snyder*, 444 F.3d 579, 584–85 (7th Cir. 2006). A medical need is serious if it is life-threatening, carries risks of permanent serious impairment if left untreated, results in needless pain and suffering, significantly affects an individual's daily activities, *Gutierrez v. Peters*, 111 F.3d 1364, 1371–73 (7th Cir. 1997), or otherwise subjects the prisoner to a substantial risk of serious harm, *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). Ribault does not appear to dispute that Jurjens's seizures were a serious medical need.

A defendant "consciously disregards" an inmate's need when the defendant knows of and disregards "an excessive risk to an inmate's health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Snipes v. Detella*, 95 F.3d 586, 590 (7th Cir. 1996). However, inadvertent error, negligence, gross negligence, and ordinary malpractice are not cruel

5

and unusual punishment within the meaning of the Eighth Amendment. *Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996).

### a. Initial refusal to continue prescription

Hospital staff, in consultation with UW Health neurology staff, recommended that Jurjens be prescribed Keppra in response to his late-June 2019 seizure, his second seizure in about seven months. Ribault ultimately decided not to renew that prescription after it lapsed. In some circumstances, a defendant's disagreement with a medical specialist may constitute conscious disregard; but that doesn't mean that a prison medical provider must always follow a specialist's treatment decision. *See, e.g.*, *Wilson v. Adams*, 901 F.3d 816, 822 (7th Cir. 2018). Rather, the provider violates the Eighth Amendment only when failing to follow the specialist's recommendation was such a significant departure from accepted medical practices that the defendant failed to exercise any medical judgment. *Petties v. Carter*, 836 F.3d 722, 729 (7th Cir. 2016); *Estate of Cole v. Fromm*, 94 F.3d 254, 262 (7th Cir. 1996). If the provider's decision is simply a "disagreement between a prisoner and his doctor, or even between two medical professionals, [it] does not establish an Eighth Amendment violation." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014).

The only reasonable inference from the undisputed facts is that Ribault exercised medical judgment in declining to extend Jurjens's Keppra prescription. Ribault noted that the medical record suggested that Jurjens's seizures had been caused by overdoses and so—counter to what Jurjens told UW Health staff—he didn't have a history of unprovoked seizures for which the Keppra would be effective. There is also evidence suggesting that Jurjens's other medication could cause seizures. And Jurjens had refused to take his Keppra seven of the ten days for which it had been prescribed, thus there wasn't sufficient reason for Ribault to

6

continue prescribing it. Ribault's decision here was at most a disagreement between doctors that is not enough to show conscious disregard of Jurjens's condition. So I will grant summary judgment to Ribault on this claim.

### b. August 26, 2019 meeting

Jurjens alleges that on August 26, 2019, defendant Ribault told Jurjens that he wouldn't follow through with an outside neurologist's recommendations for medication, imaging tests, and a follow-up appointment. In Ribault's declaration (which is undisputed), Ribault states that he did not specifically tell Jurjens this in their August 26 meeting. But the only reasonable inference is that Ribault indeed declined to follow through on the specialists' recommendations.

Nonetheless, as with Ribault's earlier decision not to continue the Keppra prescription, Ribault exercised his professional judgment in declining to move forward with the outside neurologist's orders. Ribault states that he considered that Jurjens hadn't suffered another seizure after the late-June one, that Jurjens hadn't taken most of the prescribed seizure medication during the initial ten-day prescription of Keppra, and that Jurjens told him at the appointment that he wasn't interested in taking a seizure medication because of the potential side effects. Ribault also states that he believed that the neurologist relied in part on incorrect information: the neurology notes stated that Jurjens had suffered an unprovoked seizure, but the information in Jurjens's prison medical files suggested that his seizure had been caused by an overdose; imaging wouldn't be helpful for that type of seizure. Ribault's undisputed explanation for the reasons he diverged from the neurologist's recommendations indicate

nothing more than a disagreement among doctors about treatment that does not suffice to show conscious disregard. So I will grant summary judgment to Ribault on this claim.[1]

2. **Medical malpractice**

Jurjens also brings Wisconsin-law medical malpractice claims against Ribault. The court has supplemental jurisdiction over those claims under 28 U.S.C. § 1367(a), which permits a federal district court to hear a state-law claim if it is related to a federal claim in the same action. Jurjens doesn't allege any other basis for federal jurisdiction over the state-law claims, and he alleges that he is a Wisconsin citizen. Absent unusual circumstances, district courts will relinquish supplemental jurisdiction over state-law claims if all federal claims have been resolved before trial. *Coleman v. City of Peoria, Illinois*, 925 F.3d 336, 352 (7th Cir. 2019). Neither party identifies any unusual circumstances that would justify retaining jurisdiction over Jurjens's state-law claims. I will decline to exercise subject matter jurisdiction over these claims.

Jurjens may refile those claims in state court, subject to the applicable Wisconsin statute of limitations. Those limitations periods have been tolled while this case has been pending, but they will begin again 30 days from now. *See* 28 U.S.C. § 1367(d) ("The period of limitations for any claim asserted under [the court's supplemental jurisdiction] . . . shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.").

---

[1] Defendant Ribault also contends that he is entitled to qualified immunity on Jurjens's Eighth Amendment claims against him. Because I am dismissing these claims on their merits, I need not consider Ribault's qualified immunity argument.

### B. Motion to compel discovery

Jurjens moves to compel discovery regarding interrogatories and requests for production of documents that he sent to Ribault. Dkt. 75. I previously explained that this motion came too late to consider further extending briefing on Ribault's summary judgment motion and that Jurjens should oppose Ribault's summary judgment motion with the materials that he had already acquired. Dkt. 77. Because I am granting Ribault's motion for summary judgment, I will deny Jurjens's motion to compel as moot.

### ORDER

IT IS ORDERED that:

1. Defendant Ribault's motion for summary judgment, Dkt. 59, is GRANTED.
2. Plaintiff's state-law claims are DISMISSED without prejudice under 28 U.S.C. § 1367(c)(3).
3. Plaintiff's motion to compel discovery, Dkt. 75, is DENIED as moot.
4. The clerk of court is directed to enter judgment and close the case.

Entered September 8, 2025.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge